IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM M. HAWKINS, III,

    Appellant,

v.

FRANCHISE TAX BOARD, ET AL.,

    Appellees.

No. C 10-02026 JSW

**ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT**

    Now before the Court is the appeal filed by appellant William M. Hawkins, III ("Hawkins"), of the judgment of the bankruptcy court dated April 22, 2010 excepting Hawkins' tax liabilities with respect to tax years 1997 through 2000 from discharge under 11 U.S.C. § 523(a)(1)(C). Pursuant to Civil Local Rule 16-4 and Bankruptcy Local Rule 8010-1(b), the Court deems this case submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant authority, and good cause appearing, the Court hereby AFFIRMS the bankruptcy court's judgment.

## BACKGROUND

    The relevant facts are undisputed. Hawkins co-founded the video game company Electronic Arts ("EA") in 1982 and obtained stock and/or stock options in EA. (App. to Appellant's Br. ("App.") at 71.) On the advice of his tax advisor, Hawkins participated in two tax sheltering transactions that allowed him to report significant losses on his tax returns for the tax years 1996 through 2000. (*Hawkins v. Franchise Tax Bd. (In re Hawkins)*, No. 06-30815 TEC, slip op. at 3-4 (Bankr. N.D. Cal. Apr. 22, 2010) ("Slip op.").) In July 2001 the Internal

Revenue Service ("IRS") deemed these tax shelters invalid and notified Hawkins that it was auditing his 1997 federal income tax return. (*Id.* at 4-5.) Hawkins demonstrated his understanding that this would carry significant tax burdens when, in a memorandum filed in family court in January 2004, he indicated that he owed $25 million to the IRS and the California Franchise Tax Board ("FTB") and that he was insolvent. (App. at 131 (Memorandum in Support of Petition to Modify Child Support).) During the proceedings in family court, Hawkins discussed the possibility of filing bankruptcy in the context of his ongoing negotiations with the government. (*See* Appellant's Reply Br. at 8 & n.16; Ex. B.) In March 2005 the IRS made approximately $21 million in aggregate assessments for tax years 1997 through 2000. (App. at 75 (Undisputed Facts 48 and 50-52).) In July 2005 the FTB assessed approximately $15 million in taxes, interest and penalties for the same years. (*Id.* at 76 (Undisputed Facts 60-63).)

Hawkins' expenses exceeded his earned income even after he acknowledged his tax debt and insolvency in January 2004 and taxes were assessed in March and July 2005. In a monthly income and expense analysis attached to his October 2005 Offer In Compromise, Hawkins reported wages of $16,667.67/month and an "unknown" amount of interest/dividends while reporting $94,900/month in expenses. (*Id.* at 190 (Collection Information Statement for Wage Earners and Self-Employed Individuals).) These expenses included, among other things, $7,000/month for "Food, Clothing and Misc.," $33,600/month for "Housing and Utilities," $2,700/month for "Transportation," $4,500/month for "Child/dependent care," and $40,550/month for "Other expenses." (*Id.*) The "Housing and Utilities" expense reflected payments on a $4 million loan Hawkins took out on his Atherton home in order to fund his failing 3DO venture. (*See* Appellant's Br. at 21; App. at 367 (Testimony of William M. Hawkins, III, December 3, 2009).) The "Transportation" expense included monthly payments of $1,207.61 on a Cadillac Escalade, which Hawkins and his wife bought for $69,974.28 in October 2004 to serve as the fourth vehicle for their family of two drivers. (Slip op. at 10 & n.5; Appellant's Reply Br., Ex. D (Testimony of Lisa Warnes Hawkins, December 1, 2009).)

1   In September 2006, Hawkins filed a Chapter 11 bankruptcy petition. Hawkins filed
2   schedules reporting expenses of $3,500/month for "Food," $1,100/month for "Recreation, clubs
3   and entertainment, newspapers, magazines, etc.," $2,328/month for "Transportation" (including
4   auto insurance and loan payments) and $3,800/month for "Child Care." (App. at 215-16.) The
5   bankruptcy court found Hawkins' housing expenses to be $24,583/month, (Slip op. at 22), but
6   Hawkins argues that his actual housing expenses at that time were $7,500/month (Appellant's
7   Br. at 22; *see also* App. at 215).

8   The bankruptcy court concluded that Hawkins (1) knew he had substantial tax liabilities,
9   (2) knew he was insolvent, and (3) thereafter continued to make unnecessary and unreasonable
10  expenditures despite this knowledge of his finances. (Slip op. at 13.) The bankruptcy court
11  considered this evidence sufficient to demonstrate that Hawkins "willfully attempted in any
12  manner to evade or defeat" his 1997-2000 taxes and thus excepted them from discharge under
13  11 U.S.C. § 523(a)(1)(C). Hawkins now appeals the bankruptcy court's judgment.

## ANALYSIS

**A.     Standard of Review of Bankruptcy Court's Judgment.**

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. On appeal, a district court must review a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Fed. R. Bankr. P. 8013; *see also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007). The test for clear error is not whether the appellate court would make the same findings, but whether the reviewing court, based on all of the evidence, has a definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). A reviewing court may not overturn a decision, even if it would have weighed the evidence in a different manner, so long as the trial court's view of the evidence is plausible in light of the entire record. *Id.* at 573-74. In applying the clearly erroneous standard, the appellate court views the evidence in the light most favorable to the party who prevailed below. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

**B.    The Bankruptcy Court Did Not Err in its Conclusions of Law.**

A debtor's pre-petition debts are generally all discharged in a bankruptcy proceeding. 11 U.S.C. § 727(b). However, 11 U.S.C. § 523 excepts certain debts from discharge, including tax debt as to which "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

Hawkins contends that the bankruptcy court applied an incorrect legal standard by excepting his tax obligations from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) without requiring the government to prove that Hawkins acted with specific intent to evade or defeat the tax. Though the Ninth Circuit has discussed the "fraudulent return" portion of Section 523(a)(1)(C), *see*, *e.g.*, *McKay v. United States*, 957 F.2d 689, 691 (9th Cir. 1992), it has yet to articulate the standard to determine when a debtor has "willfully attempted in any manner to evade or defeat such tax." Other circuits interpret this provision to include both a "mental state" prong (i.e., willfulness) and a "conduct" prong (i.e., an attempt to evade or defeat tax). *See*, *e.g.*, *United States v. Jacobs (In re Jacobs)*, 490 F.3d 913, 921 (11th Cir. 2007); *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 558 (6th Cir. 2004); *Tudisco v. United States (In re Tudisco)*, 183 F.3d 133, 136 (2d Cir. 1999).

The Eleventh Circuit has articulated the following test for the mental state requirement for a willful attempt to evade or defeat a tax under Section 523(a)(1)(c):

> The mental state requirement-willfulness-is satisfied where the government shows that the debtor's attempt to avoid tax liability was "done voluntarily, consciously or knowingly, and intentionally." [quoting *United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1326 (11th Cir. 2001).] That standard is met where "(1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty." [quoting *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000).]

*Jacobs*, 490 F.3d at 921. "[F]raudulent intent is not required . . . all the Government must prove is that [a debtor] acted knowingly and deliberately." *United States v. Mitchell (In re Mitchell)*, — F.3d —, 2011 WL 652517, at *6 (11th Cir. Feb. 24, 2011) (citations omitted). The conduct requirement is satisfied where the government shows that "'the debtor engaged in affirmative

//

4

acts to avoid payment or collection of the taxes,' either through commission or culpable omission." *Jacobs*, 490 F.3d at 921 (citations omitted).

Hawkins contends that Section 523(a)(1)(C) requires a showing of a "conscious effort to elude the tax by strategy or to intentionally frustrate the tax." (Appellant's Br. at 13.) To the extent that Hawkins argues that Section 523(a)(1)(C) requires a showing of fraudulent intent or malice, such a requirement is not supported by the plain language of the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989). Section 523(a)(1)(C) creates an exception from discharge for a tax debt where the debtor either "made a fraudulent return *or* willfully attempted *in any manner* to evade or defeat such tax" (emphasis added). As the bankruptcy court recognized below, the requirement under *Jacobs* that the willful act or omission be voluntary, conscious and intentional "'prevents the application of the exception [from discharge] to debtors who make inadvertent mistakes,' but does not require the government to establish fraudulent intent." (Slip op. at 15 (quoting *Jacobs*, 490 F.3d at 924).) The willfulness requirement under Section 523(a)(1)(C) is satisfied by the bankruptcy court's determination that Hawkins voluntarily and intentionally violated his known duty to pay tax liabilities. The Court determines that the bankruptcy court applied the correct standard, as articulated in *Jacobs*, for willfulness under Section 523(a)(1)(C).

Hawkins further contends that the bankruptcy court erred by determining that a finding of "unnecessary expenditures" is sufficient to except the tax debt from discharge. The bankruptcy court applied the *Jacobs* test for willfulness and determined as a matter of law that "unnecessary expenditures combined with nonpayment of a known tax can be the basis for excepting that tax from discharge." (Slip op. at 15.) Hawkins argues that the bankruptcy court's reliance on "unnecessary expenditures" to satisfy Section 523(a)(1)(C) does not set forth a clear standard for determining what expenses are "unnecessary" and would create uncertainty for insolvent tax payers.

Hawkins cites the decisions of several bankruptcy courts in support of his argument that a debtor's payment of expenses to other creditors, rather than paying a known tax, is not sufficient to establish a willful attempt to evade or defeat the tax debt without some additional

5

showing of an effort to conceal assets or deceive a taxing agency. (Appellant's Br. at 16 (citing *Rhodes v. United States (In re Rhodes)*, 356 B.R. 229 (Bankr. M.D. Fla. 2006); *Huber v. IRS (In re Huber)*, 213 B.R. 182 (Bankr. M.D. Fla. 1997); *Sonnenberg v. United States (In re Sonnenberg)*, 148 B.R. 35 (Bankr. N.D. Ill. 1992).) In each of those cases, the bankruptcy court determined that the debtor had made good faith attempts to meet his tax obligations or did not know the extent of his tax obligations. Here, by contrast, the bankruptcy court determined that Hawkins knew at least by January 2004 that he was insolvent and that he owed federal and state income taxes in the amount of $25 million, yet continued to pay other creditors as inferred from the fact that Hawkins' schedules listed no unpaid general unsecured claims. (Slip op. at 17-18 & n.13.)

In *Sonnenberg*, the IRS alleged that the debtor, despite having the wherewithal to pay his taxes, had consistently filed his taxes late and without tax payment. 148 B.R. at 38. The court nonetheless held that the government failed to satisfy the mental state prong because the debtor did not know of his debt. *Id.* (noting that the debtor mistakenly believed his taxes had been discharged in an earlier bankruptcy). In so holding, the court noted that the debtor's three marriages, two divorces, failed tax shelters, loss of investment credits, and leveraged purchase of a home all within an eighteen month period caught the debtor off-guard and left no chance to regroup. *Id.* This rapid, downward financial spiral led the court to conclude that the debtor had inadvertently rather than willfully failed to meet his tax obligations. *Id.*

In *Rhodes*, the debtor was a wealthy businessman who found himself unable to pay his tax debts due to sudden stock market circumstances beyond his control. 356 B.R. at 235. The court held that the government failed to satisfy the mental state prong because the debtor did not know he was taking action that would cause him to violate his duty to pay the debt. *Id.* at 236 (noting that the debtor's purchase of a luxury vehicle and expenditures on home improvements were made at a time when he believed he would have the resources to pay taxes). As in *Sonnenberg*, the court in *Rhodes* concluded that the debtor was "blind-sided by [a] perfect economic storm" and thus did not *willfully* fail to meet his tax obligations pursuant to Section 523(a)(1)(C). *Id.* at 235.

In *Huber*, the IRS alleged that the debtor transferred his company stock to his wife for no consideration in order to hide his assets, but the bankruptcy court determined that the debtor was not aware of the extent of his tax obligations at the time of the stock transfer. The bankruptcy court found that the debtor had "credibly testified that he did not anticipate the amount of the [tax] liability and was very surprised." 213 B.R. at 185.

The court in *Rhodes* noted that "[a] typical case of non-dischargeable tax liability pursuant to § 523 of the Bankruptcy Code often involves debtors who . . . live a lavish lifestyle they cannot afford . . . while making no effort to satisfy their tax liability." *Id.* In *Sonnenberg*, *Huber* and *Rhodes*, the debtors were allowed to discharge their taxes only because they did not know of their tax situation at the time they spent extravagantly or transferred assets.

Here, by contrast, Hawkins acknowledged in family court no later than January 2004 that he knew of his tax debt and insolvency but continued to spend lavishly thereafter. The bankruptcy court found that Hawkins "willfully avoided the collection of tax by making unreasonable and unnecessary discretionary expenditures *at a time when he knew he owed taxes and knew he would be unable to pay those taxes.*" (Slip op. at 14 (emphasis added).) "This is not a case where [Hawkins] acted appropriately once the tax was formally assessed, perhaps suggesting that [his] earlier failure to pay was based on some innocent misconception of [his] duty." (*Id.* at 23.) "[Hawkins wasted] assets through unnecessary personal spending after [he] decided to discharge [his] tax liabilities." (*Id.* at 27.) The Court concludes that the bankruptcy court's analysis of the mental state prong under the *Jacobs* test was sufficient to demonstrate the culpability of Hawkins' actions.

In determining that unnecessary expenditures combined with nonpayment of a known tax satisfied Section 523(a)(1)(C), the bankruptcy court relied in part on the holding of *Lynch v. United States (In re Lynch)*, 299 B.R. 62, 64 (Bankr. S.D.N.Y. 2003). In *Lynch*, the bankruptcy court recognized that mere nonpayment of tax is not sufficient to bar discharge of a tax debt and discussed the decisions of the district court and other bankruptcy courts that held that "the knowing allocation of resources to obligations other than taxes *would* constitute the requisite willful attempt to evade or defeat a tax." 299 B.R. at 80-83 (citing, *inter alia*, *Wright v. IRS (In*

7

*re Wright)*, 191 B.R. 291 (S.D.N.Y. 1995)). After examining numerous cases, the *Lynch* court concluded that "no court has questioned . . . that the allocation of available income to discretionary expenses and debts other than tax liabilities constitutes a willful act to evade the payment of taxes." *Id.* at 82-83.

The bankruptcy court below also relied on *Wright*, where the district court affirmed the bankruptcy court's decision to deny discharge of tax debts. The *Wright* court held that Section 523(a)(1)(C) is satisfied "if the debtor 'had the wherewithal to file his return and pay his obligation,' but 'voluntarily, consciously, and intentionally' decided to pay other creditors instead." 191 B.R. at 293 (quoting *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994)). *See also Hamm v. United States (In re Hamm)*, 356 B.R. 263, 285-86 (Bankr. S.D. Fla. 2006) (debtors "continued to spend money on various luxuries rather than on their mounting federal income tax liabilities," which "demonstrated a decision made by the Debtors to favor self-indulgence over their tax debts").

Quoting *Lynch*, the bankruptcy court articulated the standard for unnecessary expenditures in the face of a known tax as follows:

> "[T]he caselaw applying section 523(a)(1)(C) has consistently held section 523(a)(1)(C)'s requirements to be satisfied in situations where the debtor-even without fraud or evil motive-has prioritized his or her spending by choosing to satisfy other obligations and/or pay for other things (at least for non-essentials) before the payment of taxes, and taxes knowingly are not paid."

(Slip op. at 15 (quoting *Lynch*, 299 B.R. at 64).) This statement adequately places debtors on notice that their decision to prioritize other obligations or make non-essential purchases, rather than pay a known tax debt, can render their tax debts nondischargeable. Following the reasoning of other courts that have addressed the issue, the Court adopts this standard and affirms the bankruptcy court's conclusion that unnecessary expenditures combined with nonpayment of a known tax constitutes a willful attempt under Section 523(a)(1)(C).

**C.     The Bankruptcy Court Did Not Err in its Findings of Fact.**

Hawkins argues that the bankruptcy court made several errors in its characterization of his spending between 2004 and 2006. Hawkins concedes that these findings are purely factual.

8

(Appellant's Br. at 2.) The Court therefore reviews them for clear error. Fed. R. Bankr. P. 8013; *see also Healthcentral.com*, 504 F.3d at 783 (9th Cir. 2007).

The bankruptcy court found that Hawkins' living expenses between 2004 and 2006 were "truly exceptional." (Slip op. at 20.) The court cites numerous examples that support this finding. Hawkins maintained two multimillion dollar residences until July 2006. (*Id.* at 10.) In October 2004 the Hawkinses bought a $70,000 vehicle to serve as the fourth automobile for a family containing only two drivers. (*Id.* & n.5.) In both an October 2005 Collection Information Statement and a September 2006 debt schedule, Hawkins reported significantly greater personal expenses than earned income and, among other things, spent at least $3,500/month on food/clothing/etc. and $3,800/month on child care although, as the bankruptcy court noted, Hawkins' wife was a stay-at-home mother. (*Id*. at 20-23; *see* App. at 71 (Undisputed Fact 12).) Taken together, these expenditures supported the bankruptcy judge's finding that Hawkins had engaged in "unnecessary" spending between 2004 and 2006.

Hawkins appeals the bankruptcy court's finding on the grounds that the court erred by omitting his unearned income from its analysis of his income and expenses. He cites no authority, and the Court is aware of none, for the proposition that a bankruptcy court must take account of an insolvent debtor's income at any point in an analysis of alleged extravagant spending. The bankruptcy court relied on earned income as a proxy to determine what standard of living might be reasonable to expect from Hawkins.[1] (Slip op. at 19-20.) However, Hawkins was insolvent. Even if his total income, including unearned income, exceeded his expenditures, such a fact could not justify extravagant spending in the face of insolvency. To hold otherwise "would create special rules for the wealthy," in that insolvent debtors with significant income would be permitted to live lavishly while insolvent debtors with less income would be required to abstain from similar comforts. *Lynch*, 299 B.R. at 84-85. The bankruptcy court was not

---

[1] It is worth noting that Hawkins claims he had approximately $50,000/month of unearned income during the relevant time period. (Appellant's Br. at 21.) The bankruptcy court concluded that Hawkins' expenses exceeded his earned income by $78,232/month. (Slip op. at 21.) Thus, even if the court had included his unearned income in the calculation Hawkins' expenses would have exceeded his income by $28,232/month.

9

required to consider income at all and did not err by using only earned income to ascertain what spending might be reasonable to expect from Hawkins.

Hawkins next asserts that the court erred in characterizing his housing expenses as "unnecessary." His housing and utility expenses were $33,600/month in October 2005. (Slip op. at 21-22.) A major component of these costs was loan payments to service a $4 million loan on the Atherton home, which loan was used to infuse capital into Hawkins' failing 3DO venture. This loan constituted part of the $12 million Hawkins loaned to 3DO between October 2002 and January 2003, (Slip op. at 6; Appellant's Br. at 5 & n.13.), when Hawkins had already received notice from the IRS that it had a "strong case" for disallowing his tax shelters (App. at 111 (IRS Letter, dated July 11, 2002)).

Hawkins maintains that the loan "was not 'voluntary,' but, according to the investors in 3DO, a contract obligation." (Appellant's Br. at 21.) As understood by Hawkins himself, these loans were "necessary" only in the sense that he was the only possible source of capital for his badly failing company at that time. (App. at 367.) Contrary to Hawkins' suggestion that the bankruptcy court "ignore[d] that the debt on the property was not to purchase it, but to pay the loan made to 3DO," (Appellant's Br. at 21), the bankruptcy court acknowledged the purpose of the debt and would have considered it as evidence of fraud except that "the evidence of evasion of tax via unnecessary spending [was] so strong" that Section 523(a)(1)(C) was satisfied already. (Slip op. at 27-28 (comparing Hawkins' loan to 3DO to an insolvent debtor's purchase of lottery tickets).) The bankruptcy court did not, as Hawkins alleges, "ignore[] that the debt on the property was not to purchase it, but to pay the loan made to 3DO." (Appellant's Br. at 21.) The bankruptcy court's conclusion that Hawkins' housing expenses were unnecessarily high was plausible in light of the entire record, and the court therefore did not clearly err.

Hawkins next argues that the bankruptcy court erred when it reported that the Atherton home sold for $10 million and that the Cadillac Escalade was worth $70,000. In fact, as the government concedes, the Atherton home sold for $6.5 million. (Appellee's Br. at 21; *see also* App. at 77 (Undisputed Fact 70).) Though the selling price of the home was in error, it was mentioned only in passing and was not material to the bankruptcy court's analysis. (*See* Slip

10

op. at 21.) While Hawkins argues that the Escalade was worth only $45,000, Hawkins' wife testified that the purchase price was $69,974.28. (Appellant's Reply Br., Ex. D.) On this record, the bankruptcy court made no error in its assertion that the Hawkinses purchased "a $70,000 Cadillac SUV . . . ten months after [Hawkins] had acknowledged [his] tax liability and insolvency." (Slip op. at 21.)

Hawkins further contends that his "other expenses," reported to be $40,550/month in October 2005, included legal expenses and were therefore not discretionary. (Appellant's Br. at 22 ("It is self evident that legal expenses are not 'living expenses,' and are not discretionary.").) However, the bankruptcy court did not label these "other expenses" as unnecessary or discretionary. (*See* Slip op. at 21 (noting only that the "other expenses [were] not broken down").) The identity or purpose of the "other expenses" was irrelevant to the bankruptcy court's analysis, which used the "other expenses" only to the extent that they rendered Hawkins' expenses greater than his earned income. Moreover, Hawkins' expenses in October 2005 would have exceeded his earned income even without considering the "other expenses."[2] Therefore, the bankruptcy court did not err in its consideration of Hawkins' "other expenses."

Hawkins next argues that the court erred in its calculation of his housing expenses as reported in September 2006. While the court asserted that Hawkins' housing expenses at that time were $24,583/month, Hawkins argues that the court failed to consider that he had sold the Atherton home by then and was no longer making loan payments on it. Hawkins says he was only paying $7,500/month on a rental home at the time he filed his bankruptcy petition. The government concedes this point. (Appellee's Br. at 22.) However, such error was of minimal significance because the bankruptcy court used the September 2006 debt schedules to demonstrate that Hawkins was spending lavishly more than two years after acknowledging his tax debt and insolvency. As the Atherton home was not sold until July 2006, (App. at 77 (Undisputed Fact 70)), any error in describing Hawkins' September 2006 housing expenses did

---

[2] The bankruptcy court found that Hawkins' expenses in October 2005 exceeded his earned income by $78,232/month. (Slip op. at 21.) Had the court omitted the $40,550/month of "Other expenses" from the analysis entirely, Hawkins' expenses still would have exceeded his earned income by $37,682/month.

11

not distort the bankruptcy court's picture of Hawkins' expenses between January 2004 and June 2006. Even though the bankruptcy court erred in its calculation of housing expenses from July to September 2006, the bankruptcy court's finding that Hawkins caused "Debtors to deplete their assets on large unnecessary expenditures for an extended period of time" (Slip op. at 28-29) was not clearly erroneous in the context of Hawkins' housing expenses throughout the 2004-2006 span into which the bankruptcy court inquired.

Hawkins further argues that the court erred in failing to consider his attempts to conserve assets for the IRS. He does not cite to any part of the record in which any of these considerations were presented to the bankruptcy court, (*see* Appellant's Br. at 23-24; Appellant's Reply Br. at 13-14), nor does he respond to the government's contention that he failed to present evidence to the bankruptcy court of his efforts to preserve assets for the government (Appellee's Br. at 20 n.10). Hawkins is precluded from raising this argument for the first time on appeal. *Gold Coast Asset Acquisition, L.P. v. 1441 Veteran St. Co. (In re 1441 Veteran St. Co.)*, 144 F.3d 1288, 1293 (9th Cir. 1998).

**D.    Hawkins' Tax Debt Is Excepted from Discharge Under Section 523(a)(1)(C).**

Hawkins' final contention is that the evidence presented was insufficient to find that Hawkins willfully attempted to evade or defeat his taxes. This contention addresses a mixed question of law and fact, as "the issue is whether the facts satisfy the legal rule," and the Court therefore reviews the bankruptcy court's holding de novo. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (*en banc*). Non-dischargeability of Hawkins' debt must be shown by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The bankruptcy judge determined that the evidence showed that Hawkins understood by January 2004 that he owed $25 million in taxes, that he did not have the means to pay his tax liabilities, planned to discharge those taxes in bankruptcy, and, having seen his finances collapse around him, nonetheless continued to spend money extravagantly with knowledge of his tax liabilities. (Slip op. at 16-23.) The bankruptcy court concluded that Hawkins *planned to defeat his taxes* via bankruptcy and continue living the lifestyle to which he had grown

1  accustomed. (*Id.* at 18-19.) The evidence considered by the bankruptcy court was sufficient to
2  show that Hawkins "willfully attempted in any manner to evade or defeat" his tax debts.

### 1. Hawkins satisfied the mental state requirement.

The record demonstrates that Hawkins satisfied the mental state requirement of Section 523(a)(1)(C). "The mental state requirement-willfulness-is satisfied where the government shows . . . '(1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty.'" *Jacobs*, 490 F.3d at 921 (quoting *Griffith*, 206 F.3d at 1396). "[F]raudulent intent is not required . . . all the Government must prove is that [a debtor] acted knowingly and deliberately." *Mitchell*, 2011 WL 652517 at *6 (citations omitted). Even the simple choice not to file tax returns, together with nonpayment of tax debt, can satisfy the mental state requirement. *Fretz*, 244 F.3d at 1331.

Hawkins acknowledged his insolvency and considerable tax debt in papers filed in family court in January 2004. During those proceedings, he further acknowledged that he intended to discharge those taxes in bankruptcy. After revealing his knowledge and his plans, Hawkins continued for over two years to spend at least $3,500/month on food for a family of six and $3,800/month on child care while his wife was a stay-at-home mother. He maintained two multimillion dollar homes with no apparent attempt to sell either one as soon as practicable, whether in a "fire sale" or in a more measured way. He purchased a fourth vehicle for a family of two drivers at a cost of nearly $70,000, thus incurring further debt and the costs attendant to owning four vehicles. Clearly, Hawkins had a duty to pay his tax debt under the law, knew he had that duty, and voluntarily and intentionally violated that duty by choosing to pay for non-essential expenses at a time when he knew he was unable to pay back his debt and had planned not to do so. *Jacobs*, 490 F.3d at 921; *see also Fretz*, 244 F.3d at 1331 (finding a debtor's conduct willful where he "chose to ignore" his tax responsibilities). He therefore satisfied the mental state requirement of Section 523(a)(1)(C).

Hawkins contends that the bankruptcy court erred by inferring willfulness from his actions without finding particular "badges of evasion," *i.e.*, acts taken as evidence of evasive intent. Specifically, Hawkins argues that the bankruptcy court's failure to identify any one act

13

1  taken for the purpose of evading a tax precluded a finding that his badges of evasion, taken

2  together, supported an inference of culpability. The Ninth Circuit has not articulated a test

3  regarding "badges of evasion" in the context of the willfulness requirement of Section

4  523(a)(1)(C). In the context of fraud, however, the Ninth Circuit has held that fraudulent intent

5  may be inferred from individually innocent "badges of fraud." *See*, *e.g.*, *Maciel v. Comm'r of*

6  *Internal Revenue*, 489 F.3d 1018, 1026 (9th Cir. 2007). Hawkins appears to derive the "badges

7  of evasion" approach from the "badges of fraud" analysis used to infer fraudulent intent. *See*

8  *Griffith*, 206 F.3d at 1396-97 (suggesting that the presence of multiple "badges of fraud" would

9  support a finding of fraud and, *a fortiori*, a finding of willfulness for purposes of Section

10  523(a)(1)(C)).

11      The bankruptcy court recognized that in some cases, courts have found particular badges

12  of evasion, or indicia of willful tax evasion: "failure to file returns; concealment of income;

13  failure to pay the amount shown on the returns; or transfer of assets without consideration."

14  (Slip op. at 29 (citing *Lynch*, 299 B.R. at 83 n.96).) The Court agrees with the bankruptcy

15  court's determination that "no specific type or number of badges of evasion is required" to find

16  a willful attempt to evade or defeat tax. (*Id.*) Evidence of "fairly egregious taxpayer acts"

17  would be sufficient, but not necessary, to support a finding of willfulness. *See Lynch*, 299 B.R.

18  at 82-83 & n.96. Accordingly, the bankruptcy court was permitted to infer culpable intent from

19  actions that demonstrate willful failure to pay tax: "[Hawkins'] exceptional business

20  sophistication; [Hawkins'] open acknowledgment of his tax debt and insolvency; the length of

21  time over which [Hawkins] caused Debtors to expend funds on unnecessary expenditures after

22  he acknowledged the tax debt; the amount of unnecessary expenditures; and the extent to which

23  unnecessary expenditures exceeded Debtors' earned income." (Slip op. at 29.)

24      Hawkins contends that the bankruptcy court's failure to identify a particular badge of

25  evasion would "'convert' otherwise innocent actions into to [sic] guilty ones." (Appellant's

26  Reply Br. at 7.) To satisfy the test for willfulness, "it is not necessary to prove that the debtor

27  was inspired by 'bad purpose or evil motive' in failing to pay his taxes." *Wright*, 191 B.R. at

28  293 (quotation omitted). Where the debtor "'had the wherewithal to file his returns and pay his

14

obligation,'" the debtor's "allocation of available income to discretionary expenses and debts other than tax liabilities constitutes a willful act to evade the payment of taxes." *Lynch*, 299 B.R. at 81, 83 (quotation and citations omitted). The bankruptcy court's finding of willfulness is supported fully by the record.

### 2. Hawkins satisfied the conduct requirement.

The conduct requirement is satisfied where the government shows that "'the debtor engaged in affirmative acts to avoid payment or collection of the taxes,' either through commission or culpable omission." *Jacobs*, 490 F.3d at 921 (citations omitted). Most cases in which discharge is excluded under Section 523(a)(1)(C) involve actions taken for the sole purpose of evading or defeating taxes, such as failure to file tax returns, concealment of income, purchases made in a spouse's name, etc. (*See* Slip op. at 15 nn.9-11 (listing numerous cases involving such actions).) Mere nonpayment of a tax, without more, fails to satisfy the conduct requirement. *Griffith*, 206 F.3d at 1394 (citing *Haas v. IRS (In re Haas)*, 48 F.3d 1153, 1158 (11th Cir. 1995)). However, large discretionary expenditures, combined with nonpayment of a known tax, contributes to the conduct analysis. *See*, *e.g.*, *Jacobs*, 490 F.3d at 926-27; *Gardner*, 360 F.3d at 560-61. Moreover, nonpayment of a tax can satisfy the conduct requirement when paired with even a single additional culpable act or omission. *See*, *e.g.*, *Fretz*, 244 F.3d at 1329-30 (conduct requirement was satisfied where debtor's only culpable acts were nonpayment of taxes and intentional failure to file tax returns); *Fegeley v. United States (In re Fegeley)*, 118 F.3d 979, 984 (3d Cir. 1997) (same); *Toti*, 24 F.3d 806, 809 (6th Cir. 1994) (same).

Hawkins characterizes the bankruptcy court's analysis of the conduct prong as resting solely on Hawkins' allegedly innocent failure to pay his taxes. (*See*, *e.g.*, Appellant's Br. at 17.) Hawkins misreads the bankruptcy court's opinion, which repeatedly stressed that nonpayment of taxes was just one factor in a decision that also rested on Hawkins' spending patterns and his knowledge of his debt and insolvency. The bankruptcy court inferred from this behavior that Hawkins, having planned to discharge his taxes in bankruptcy, nevertheless lived extravagantly to the detriment of the IRS and FTB as creditors. The Court rejects Hawkins' contention that "[t]here is not a single finding, or even suggestion, that Hawkins acted in anything other than an

honest and forthright manner at all times." (Appellant's Br. at 17.) Rather, the bankruptcy court only avoided the "difficult question" of whether Hawkins "acted with intent to defraud" because it did not need to reach that issue in light of its other holdings. (Slip op. at 12-13.) The bankruptcy court's finding that Hawkins "avoided the collection of tax by making unreasonable and unnecessary discretionary expenditures at a time when he knew he owed taxes and knew he would be unable to pay those taxes," (Slip op. at 14), is sufficient to satisfy the conduct requirement of Section 523(a)(1)(C).

Hawkins satisfied both the mental state and conduct requirements of 523(a)(1)(C). His tax debts must therefore be excepted from discharge.

### E.  FRAUDULENT RETURNS

Because the Court affirms the bankruptcy court's determination that Hawkins "willfully attempted . . . to evade or defeat" his taxes, it need not reach the government's contention on alternate grounds that Hawkins's taxes should be excepted from discharge under § 523(a)(1)(C) based on allegations that Hawkins made fraudulent returns as to those taxes.

### CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 22, 2011

JEFFREY S. WHITE  
UNITED STATES DISTRICT JUDGE

16